United States District Court for the Eastern District of Pennsylvania

| | | |
|---|---|---|
| Shaneena Holland-Carter | : | |
| | : | |
| v. | : | Civil Action No. 22-3542 |
| | : | |
| UPMC Health Plan, Inc. | : | |

**Plaintiff's Memorandum of Law in Opposition to**
**Defendant's Motion for Summary Judgment**

Plaintiff, Shaneena Holland-Carter, by and through her attorney, hereby submits this Memorandum of Law in opposition to Defendant's Motion for Summary Judgment.

**I.     Introduction**

In this case, Shaneena Holland-Carter, a Black female, alleges that she was discriminated and retaliated against because of her race, and subjected to a racially hostile work environment, in the latter stages of her employment with defendant, which ultimately led to her suspension and termination.  As is typical, defendant contends her suspension and termination were based on alleged performance issues.  In truth, however, the evidence shows Ms. Holland-Carter was victimized by a White female supervisor with a demonstrated bias against her Black female subordinates, and a self-proclaimed Human Resources "expert" who violated defendant's relevant policies and ignored best practices in the human resources field in suspending and terminating Ms. Holland-Carter.  Despite the fact that there remain genuine issues of material fact in dispute concerning whether defendant's stated reasons for suspending and terminating Ms. Holland-Carter were pretextual, defendant has moved for summary judgment on all of Ms. Holland-Carter's claims.  For the reasons set forth herein, the Court should deny Defendant's Motion for Summary Judgment in its entirety.

**II.     Background Facts**

By way of background facts, Ms. Holland-Carter incorporates herein by reference as if set forth in full Plaintiff's Answer to Defendant's Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment and Additional Facts in Opposition to Defendant's Motion for Summary Judgment, and Plaintiff's Appendix in Opposition to Defendant's Motion for Summary Judgment.

**III.    Argument**

    **A.     The summary judgment standard.**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, supra, 477 U.S. at 323.  When the moving party does not bear the burden of persuasion at trial, as is the case here, its burden "may be discharged by 'showing' – that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*.

To defeat a motion for summary judgment, the non-movant need only produce evidence sufficient to establish the existence of a genuine issue of material fact regarding the essential elements of her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party need not match, item for item, each piece of evidence proffered by the movant, but simply must exceed the "mere scintilla" standard to raise a genuine issue of material fact. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993).

The substantive law governing the dispute determines which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Facts that could alter the outcome of a case are "material." See *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995).

A summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Peters v. Delaware River Port Authority of Pa. and N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994); *Petruzzi's IGA Supermarkets, Inc.*, supra, 998 F.2d at 1330 (3d Cir. 1993); *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir. 1986), cert. denied, 480 U.S. 947 (1987). Credibility determinations and the weighing of evidence must be left to the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Simply stated, "if reasonable minds can differ as to the import of the proffered evidence that speaks to an issue of material fact, summary judgment should not be granted. *Morrison v. Coatesville Area School District*, 2000 WL 1185375 *4 (E.D.Pa. Aug. 21, 2000).

In reviewing the evidence submitted by the parties, a court must grant all reasonable inferences arising therefrom in favor of the non-movant, *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), and "the evidence of the nonmovant is to be believed," *Anderson*, supra, 477 U.S. at 255.  Inferences should be drawn in the light most favorable to the nonmoving party, and where the nonmoving party's evidence contradicts the movant's, the nonmoving party's evidence must be taken as true. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied 113 S. Ct. 1262 (1993).  "If there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment…." *Celotex Corp.*, supra, 477 U.S. at 330 n.2.  In fact, a court cannot make an inference detrimental to the nonmoving party's case when a favorable inference is also possible. *Weinstein v. Bullick*, 827 F. Supp. 1193, 1201 (E.D. Pa. 1993).

Court's typically consider summary judgment an inappropriate occasion to resolve an issue like intent.  *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994).  In employment discrimination cases particularly, where intent and credibility are critical, a court must apply the summary judgment evidentiary standards with particular care.  *Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir. 1997).  Moreover, motions for summary judgment are subject to additional safeguards in employment discrimination actions. *Aman v. Cort Furniture Rental Co.*, 85 F.3d 1074, 1082 (3d Cir. 1996)(cautioning courts to look especially carefully in modern-day Title VII cases to make sure discrimination had not been "coat[ed]" with the "appearance of propriety"); see also *Williams v. URS Corp.*, No. 04-1055, 2005 WL 361573 (3d Cir. Feb. 16, 2005) at *4 ("summary judgment must not become a procedural expedient for resolving claims that raise a genuine issue of fact even though courts

4

may be skeptical of the merits of plaintiff's underlying claim"). In fact, at least one court has noted that the ascertainment of intent may defeat summary judgment. "[I]n a Title VII action, where a defendant's intent and state of mind are placed at issue, summary judgment is ordinarily inappropriate." *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991) (citations omitted). By pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment. *U. S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716-17 (1983).

B. **The race discrimination legal standard.**

In cases such as this where there is no direct evidence of discrimination, the burden of proof is governed by the framework announced in *McDonnell Douglas Corp. v. Ford*, 411 U.S. 792 (1973). The plaintiff first must establish the elements of a *prima facie* case of discrimination. The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged action. To prevail, the plaintiff must then prove that the employer's articulated reason for the challenged action was a pretext for discrimination.

Where a plaintiff alleges she was the victim of disparate treatment with respect to discipline, to establish a *prima facie* case she must show 1) that she is a member of a protected class; 2) that she was qualified to perform the duties of her position; 3) that she was disciplined; and 4) that the circumstances surrounding her discipline give rise to an inference of discrimination. <u>See</u> *Jones v. School Dist. of Phila.,* 198 F.3d 403, 410 (3d Cir. 1999*)*.

Once the defendant articulates a legitimate, non-discriminatory reason for the discipline, the plaintiff can defeat summary judgment by pointing "to some evidence, direct or circumstantial, from which a reasonable finder of fact could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason

was more likely than not a motivating or determinative cause of the employer's action." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331 (3d Cir. 1995) (*citing* *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994). The plaintiff can satisfy the first prong of this burden by "demonstrate[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons for its actions that a reasonable fact finder could rationally find them 'unworthy of credence.'" *Fuentes*, supra, 32 F.3d at 765; *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061 (3d Cir. 1996) (en banc). "If a plaintiff comes forward with evidence that would cause a reasonable factfinder to find the defendant's proffered reason 'unworthy of credence,' he need not adduce any evidence of discrimination beyond the prima facie case to survive summary judgment." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 430 (3d Cir. 2013) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 310 (3d Cir. 2012)). The plaintiff can satisfy the second prong by showing " 'that the employer has previously discriminated against the plaintiff, that the employer had previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class.'" *Jones*, supra, 198 F.3d at 413 (*citing* Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998).

With respect to pretext, the Court's duty is to determine "'whether the employer gave an honest explanation of its behavior' that is not discriminatory." *Carfagno v. SCP Distrib., LLC*, No. 14-4856, 2016 WL 521196, at *5 (E.D. Pa. Feb. 10, 2016) (quoting *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995). In that regard, a defendant's failure to impose progressive discipline can serve as evidence of pretext if "a progressive disciplinary policy is 'mandatory or rigorously followed.'" *Williams v. Wells Fargo Bank*, No. 14-2345, 2015 WL

1573745, at *9 (E.D. Pa. Apr. 9, 2015) (quoting *Emmett v. Kwik Lok Corp.*, 528 F. App'x 257, 262 (3d Cir. 2013).

      C.      **The retaliation legal standard.**

Retaliation claims based on circumstantial evidence are assessed under the McDonnell Douglas burden-shifting framework. This framework requires the plaintiff to first establish a *prima facie* case of retaliation. Then the defendant must articulate a legitimate, non-discriminatory reason for any adverse employment actions. Finally, the plaintiff must prove that the articulated reasons were merely pretext for retaliation.

To establish a *prima facie* case of retaliation, the plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal relationship exists between the adverse employment action and the exercise of protected activity. <u>See</u> *Carvalho-Grevious v. Del. Sate Univ.*, 851 F.3d 249, 257 (3d Cir. 2017); *Castleberry v. STI Grp.*, 863 F.3d 259, 267 (3d Cir. 2017). "When the 'temporal proximity' between the protected activity and adverse action is 'unduly suggestive,' this 'is sufficient standing alone to create an inference of causality and defeat summary judgment.'" *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)).

      D.      **There is no basis to dismiss Ms. Holland-Carter's race discrimination claim.**

Ms. Holland-Carter has made out a *prima facie* case of race discrimination. The evidence establishes the four required elements: she is Black, she was qualified for the position of Service Coordinator (*see* Exs. D-9 and D-10), she was disciplined, and as set forth in more detail below, the circumstances surrounding her discipline raise an inference of race discrimination.

For purposes of responding to Defendant's Motion for Summary Judgment, Ms. Holland-Carter acknowledges defendant has articulated a legitimate, non-discriminatory reason for suspending and terminating her. However, the same evidence that establishes the fourth element of a *prima facie* case, some disputed and some not, demonstrates that defendant's stated reasons for suspending and terminating Ms. Holland-Carter are pretextual. The evidence obtained during discovery casts serious doubt on the credibility of defendant's key witnesses, Ms. Dember and Ms. Bisch, the principal actors in the events that ultimately resulted in Ms. Holland-Carter's termination.

First, Ms. Dember, Ms. Holland-Carter's direct supervisor, had a demonstrated history of bias against Black females. Ms. Dember did not become a supervisor with defendant until mid-2021, and did not become Ms. Holland-Carter's supervisor until August 2021. In the short time since she became a supervisor and prior to Ms. Holland-Carter's suspension in February 2022, the only service coordinators she disciplined were Black females: Tika Steepe, J. Lewis, and Kendra Prussien. Ms. Lewis was put on a Development Plan, Ms. Steepe was put on a Development Plan, and Ms. Prussien was terminated. During that period, Ms. Dember supervised 13 Service Coordinators, including Ms. Holland-Carter, 6 of whom were White.

Second, despite the fact that defendant utilizes a progressive disciplinary system, Ms. Dember never gave Ms. Holland-Carter a formal verbal warning or a formal written warning about her alleged performance issues.

Third, Ms. Dember consistently alleged that Ms. Holland-Carter had 108 outstanding tasks at the time she went out on leave in October 2021. However, defendant never produced any evidence to corroborate that claim.

Fourth, the Service Coordinators to whom Ms. Dember assigned Ms. Holland-Carter's cases when she was out on leave were supposed to complete whatever incomplete tasks existed at the time. However, although Ms. Dember claimed that she conducted bi-weekly supervision meetings with her subordinate Service Coordinators, she had no idea whether all or any of the alleged 108 outstanding tasks on Ms. Holland-Carter's cases were completed by the time she returned from leave on December 6, 2021. Ms. Dember testified falsely because Ms. Bisch told Ms. Pope on January 12, 2022 that Ms. Dember had told her Ms. Holland-Carter had over 100 outstanding tasks when she came back from leave.

Fifth, Ms. Dember identified two issues she claimed existed as of and prior to the December 10, 2021 Supervision Meeting that supported disciplining Ms. Holland-Carter: 1) she did not attend scheduled meetings, and 2) she did not attend scheduled "huddles." However, defendant produced no evidence to corroborate or substantiate either of those allegations, other than the December 10, 2021 Supervision Template prepared by Ms. Dember.

Sixth, as late as the supervision meeting held on December 13, 2021, Ms. Dember stated that the 71 outstanding tasks Ms. Holland-Carter had to complete at that time was within reason. More importantly, Ms. Dember admitted that because Ms. Holland-Carter had been back to work only one week, she could not determine whether Ms. Holland-Carter had any performance issues that would have necessitated putting her on a development plan.

Seventh, even as late as her Teams Exchange with Ms. Holland-Carter on January 3, 2022, and the January 10, 2022 Supervision Meeting with Ms. Holland-Carter, despite having given Ms. Holland-Carter a "Poor Performer" rating on her Annual Performance Evaluation 2021, Ms. Dember stated she did not know whether at that time it would have been advisable to put Ms. Holland-Carter on a Development Plan. Nevertheless, defendant contends that two (2)

9

days later, she realized that Ms. Holland-Carter's performance issues were so significant that she and Mr. Mendez decided to meet with Ms. Bisch about them. Ms. Bisch reported those alleged concerns to Ms. Pope on January 12, 2022. During that meeting, Ms. Dember, Ms. Bisch, and Mr. Mendez discussed whether to put Ms. Holland-Carter on a Development Plan, and refused to do so.

Eighth, defendant contends Ms. Dember randomly selected the cases assigned to Ms. Holland-Carter that either she or Ms. Moore audited. Given Ms. Dember's demonstrated bias against Black females, it cannot be presumed she randomly selected the cases to audit. It is more likely that she selected for audit those cases which would have put Ms. Holland-Carter in the worst possible light.

Defendant's investigation of Ms. Holland-Carter's alleged performance issues provides additional evidence to support the conclusion that defendant's stated reasons for suspending and terminating Ms. Holland-Carter were pretextual. The investigation ignored key, relevant evidence, and its outcome was a foregone conclusion. Ms. Pope, defendant's Senior Compliance Manager, conducted the alleged investigation. Incredibly, she had not been trained on defendant's Performance Management Policy or Corrective Action and Discharge Policy, the two principal policy at issue. She never demanded that anyone produce, and never obtained, any documentation to corroborate or substantiate Ms. Dember's claim that Ms. Holland-Carter had over 100 outstanding tasks when she came back from leave. She interviewed Ms. Holland-Carter and Mr. Mendez during the investigation, and gave Mr. Mendez the opportunity to respond to statements made by Ms. Holland-Carter, but she did not give Ms. Holland-Carter the opportunity to respond to statements made about her by Mr. Mendez.

Ms. Bisch contends she made the decision to suspend and terminate Ms. Holland-Carter. Her actions in connection with those decisions provide additional evidence to support the conclusion that defendant's stated reasons for suspending and terminating Ms. Holland-Carter were pretextual. Ms. Bisch proclaims herself to be a human resources expert. However, no court on the planet has so qualified her, and although she claims to be familiar with the term "best practices," she did not know what the term meant in the human resources context.

She directed Mr. Mendez and Ms. Dember to audit some of Ms. Holland-Carter's cases despite the fact that defendant has no formal policy about when audits of Service Coordinator cases should be done, or what the audit procedure should entail.

Ms. Bisch admitted she received a complaint from Ms. Holland-Carter about Ms. Dember in late January 2022. According to Ms. Bisch, Ms. Holland-Carter wanted a new caseload because she had moved from Philadelphia to Delaware County. Ms. Bisch acknowledged that Ms. Dember could have assisted Ms. Holland-Carter in getting her cases reassigned. Ms. Holland-Carter told Ms. Bisch that Ms. Dember told her the caseload could not be reassigned.

Despite her obvious responsibilities as a human resources representative, Ms. Bisch took no action in response to Ms. Holland-Carter's complaint. Instead, she told Ms. Holland-Carter she could not help her, and that Ms. Holland-Carter should ask Ms. Dember *again* to assist her in reassigning her caseload, and to send Ms. Bisch an email if she had any other concerns.

Ms. Bisch claimed she did not recall Ms. Holland-Carter complaining about Ms. Dember's attitude and demeanor towards her or that Ms. Dember was harassing her and being rude to her. She acknowledged that if Ms. Holland-Carter had complained during the call the Ms. Dember was rude to her and had harassed her, she would have viewed those statement as a harassment complaint and she would have investigated Ms. Holland-Carter's concerns.

11

Contrary to a human resources best practice, Ms. Bisch never memorialized either Ms. Holland-Carter's call during which she complained about Ms. Dember, or her meeting with Ms. Dember and Mr. Mendez during which she directed them to audit some of Ms. Holland-Carter's cases. Ms. Bisch claimed that she only memorialized personnel, not operational matters. Yet she failed to memorialize the meeting with Mr. Mendez and Ms. Dember, which clearly involved a personnel matter. *Id.* at 44:9-46:22.

Ms. Bisch testified that she made the decision to suspend, and then terminate, Ms. Holland-Carter on February 14, 2022. However, in the suspension letter dated February 14, 2022, which she emailed to Ms. Holland-Carter on February 22, 2022, defendant deliberately mislead Ms. Holland-Carter by stating that the investigation of her performance was ongoing. Incredibly, Ms. Bisch claimed that the delay between the suspension letter to Ms. Holland-Carter (February 14, 2022) and the termination letter to Ms. Holland-Carter (March 9, 2022) was caused by "paperwork."

In deciding to terminate Ms. Holland-Carter, Ms. Bisch did not consider Ms. Holland-Carter's prior Performance Evaluations when making her disciplinary decisions. This was in direct violation of defendant's Corrective Action and Discharge Policy, which requires that an employee's record be given "due deliberation" when making termination decisions. Ms. Bisch did not take into consideration Ms. Holland-Carter's prior performance record as evidenced by the Annual Performance Evaluations for 2019 and 2020 and her lack of a prior disciplinary record in deciding to suspend and terminate her.

Ms. Bisch acknowledged that with respect to the areas for which she was the assigned Human Resources employee, including the area in which Ms. Holland-Carter worked, it was her responsibility to ensure there was no discrimination in those areas with respect to discipline and

12

termination. She claimed that all of her actions and decisions were color-blind, but she did nothing to ensure that disciplinary decisions are not motivated by race.

Ms. Bisch acknowledged that it was a violation of defendant's policy to attempt to retaliate against a person who files a complaint of harassment, and that under defendant's Grievance Procedure, Human Resources is supposed to investigate employee complaints, which do not have to be in writing.

Ms. Bisch claimed she prepared the Corrective Action Discipline Authorization form that formalized Ms. Holland-Carter's termination 2-3 days sfter she met with Ms. Pope on February 14, 2022. She confirmed that it states all of the reasons for Ms. Holland-Carter's termination. She stated on the Corrective Action Discipline Authorization that performance issues regarding Ms. Holland-Carter were reported to her on December 27, 2021. However, she had no documentation to corroborate that date. Moreover. Mr. Mendez testified he did not meet with Ms. Bisch about performance issues related to Ms. Holland-Carter until after December 31, 2021.

Significantly, Ms. Bisch confirmed the accuracy of the statement made by Ms. Pope in her Investigation Narrative that Ms. Bisch decided on January 19, 2022, while the alleged investigation of Ms. Holland-Carter's performance issues was underway, to suspend Ms. Holland-Carter.

Defendant and Ms. Bisch went to great lengths to attempt to establish that Ms. Holland-Carter's suspension and termination were not in retaliation for her complaint about Ms. Dember. For her part, although she did not audit any of Ms. Holland-Carter's cases herself, and had no documents to confirm the date of her meeting with Ms. Dember and Mr. Mendez to discuss Ms. Holland-Carter's alleged performance issues, or the date of the call she received from Ms.

Holland-Carter complaining about Ms. Dember, Ms. Bisch claimed that the audit of Ms. Holland-Carter's cases began before she received Ms. Holland-Carter's complaint.

Ms. Bisch also did nothing to either provide Ms. Pope with all relevant data related to the alleged investigation of Ms. Holland-Carter's performance, or to ensure Ms. Dember was not singling out Ms. Holland-Carter for discipline. For example, although in early 2022 Ms. Bisch could have obtained the PCSP list, the Tasks list, and the annual performance evaluations for all of the Service Coordinators who reported to Ms. Dember to determine how Ms. Holland-Carter's performance compared to other Service Coordinators supervised by Ms. Dember, she failed to obtain or review any of that data.

All of the disciplinary activity directed against Ms. Holland-Carter must be considered in the context of Ms. Holland-Carter's work performance prior to coming under the supervision of Ms. Dember. In her Annual Performance Evaluation 2019, Ms. Holland-Carter was given an overall performance rating of "Good Performer" by her then Supervisor, Diana Parker, a White female. And in her Annual Performance Evaluation 2020, Ms. Holland-Carter was given an overall performance rating of "Good Performer" by her then Supervisor, Diana Parker, a White female. Ms. Parker wrote, in pertinent part,

> "Shaneena treats all Participants, teammates, and fellow employees with dignity and respect;…Shaneena completes quality documentation in Interaction notes, InterRAI assessments, care plans, and service plans…. Shaneena manages her caseload responsibly….Shaneena consistently meets the expected standards for the position….She requires an expected amount of supervision, direction, and follow-up. She meets expectations consistently and is fully qualified for [the] position.

The evidence discussed above demonstrates that there remain genuine issues of material fact in dispute concerning whether Ms. Holland-Carter has shown that the circumstances surrounding her suspension and termination give rise to an inference of race discrimination and

whether she has shown that defendant's stated reasons for suspending and terminating her were pretextual. Accordingly, the Court should deny Defendant's Motion for Summary Judgment with respect to Ms. Holland-Carter's race discrimination claim.

### E. There is no basis to dismiss Ms. Holland-Carter's retaliation claim.

Ms. Holland-Carter has established a prima facie case of retaliation. She engaged in protected activity by complaining to Ms. Bisch about Ms. Dember and by requesting that Ms. Dember have Mr. Mendez attend a February 2022 supervision meeting between her and Ms. Dember; she suffered the adverse employment actions of suspension and termination; and a causal relationship exists between those adverse employment actions and her exercise of protected activity. Specifically, as reflected in the written statement provided by Ms. Holland-Carter,

> "However, on Feb 4, I contacted Employee Assistance Services to request insight on my rights, discuss a prospective leave of absence, communicate the ongoing stress with my supervisor, and her failure to report my county transfer to her supervisor. I was told that this was a HR issue and provided with Jacqueline Bisch's contact information. I called JB and asked if company policy still stands as SC's are assigned to work within their county of residence….
>
> I then on Feb 4, 2022 and in writing, requested for her supervisor to be Present during supervision because I could no longer withstand the toxic Work environment and unnecessary chaos."

Pl. App. Ex. 31

Ms. Bisch made the decision to suspend and terminate Ms. Holland-Carter on February 14, 2022, ten (10) days after these events. That 10-day period clearly establishes the required temporal proximity, is "unduly suggestive," and is sufficient standing alone to defeat summary judgment.

Notwithstanding these facts, the facts discussed above in Section D show that there remain genuine issues of material fact in dispute concerning whether defendant's stated reasons for suspending and terminating Ms. Holland-Carter were pretextual.  Accordingly, the Court should deny Defendant's Motion for Summary Judgment with respect to Ms. Holland-Carter's retaliation claim.

**F.	Conclusion**

For the foregoing reasons, Plaintiff, Shaneena Holland-Carter, respectfully requests that the Court deny Defendant's Motion for Summary Judgment with respect to her race discrimination and retaliation claims.

    *s/Robert T Vance Jr*
Robert T Vance Jr
Law Offices of Robert T Vance Jr
123 South Broad Street, 15th Floor
Philadelphia PA 19109
267 887 0172 tel / 215 501 5380 fax
rvance@vancelf.com

*Attorney for Shaneena Holland-Carter*