**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHANEENA S. HOLLAND-CARTER, | |
| Plaintiff, | |
| v. | Civil Action No.: 2:22-cv-03542 |
| UPMC HEALTH PLAN, INC, | |
| Defendant. | |

### REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant UPMC Health Plan, Inc. (the "Health Plan" or "Defendant") terminated Plaintiff after an audit of her cases revealed her numerous performance deficiencies. There is no evidence that race played any role in the termination decision. Plaintiff's Opposition to summary judgment fails to identify any material fact dispute that would defeat Defendant's Motion. In fact, Plaintiff **_admits_** the key facts that prove the Health Plan's decision to terminate her was not discriminatory, including that the audit of her caseload identified critical problems with her performance. Despite these admissions, Plaintiff attempts to salvage her position by including additional "facts," which are either unsupported by the record or entirely irrelevant to her termination and claims of discrimination. Speculation, unsupported allegations, and second-guessing are not evidence and cannot create a material fact dispute. See Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994) (plaintiff's burden is a "difficult" one, requiring more than her own speculation that her race was the reason for her termination); E.E.O.C. v. Dart Container Corp., No. 08-5535, 2012 WL 1969062, at *15 (E.D. Pa. June 1, 2012) (plaintiffs failed to meet the "heavy burden" required to show pretext); Doe v. Apria Healthcare Group Inc., 97 F. Supp. 3d 638 (E.D. Pa. 2015) ("the ultimate burden of

proving intentional discrimination always rests with the plaintiff"). Accordingly, the Health Plan

is entitled to summary judgment.

I.    **ARGUMENT**[1]

    A.    **Plaintiff Admits the Significant Performance Issues that Led to Her Termination and Offers Nothing More than Her Own Speculation that the Health Plan Discriminated Against Her.**

   Plaintiff has admitted all of the material facts relating to the Health Plan's decision to

terminate her employment, which prove that the decision was not motivated by discrimination and

defeats any claim of pretext. Specifically, Plaintiff admits that:

- Jacquelynne Bisch, the Human Resources representative and decision-maker, requested an audit of Plaintiff's caseload "in order to review whether applicable policies and procedures were being followed." See Def. Statement of Facts at ¶ 21; Pl. Opposition to Def. Statement of Facts at ¶ 21.

- The audit of Plaintiff's cases, conducted by Plaintiff's supervisor Olga Dember, found critical problems, including "missing documentation, incomplete tasks, and care plans that had not been updated" as well as failure to report possible neglect to Adult Protective Services ("APS"). See Def. Statement of Facts at ¶¶ 32, 37; Pl. Opposition to Def. Statement of Facts at ¶¶ 32, 37.

- An audit of additional cases, conducted by Audrey Moore, a nurse who had never met Plaintiff and did not know her race, also found significant issues including outdated care plans, missing authorizations, and lack of regular outreach to participants. See Def. Statement of Facts at ¶¶ 33, 35-36; Pl. Opposition to Def. Statement of Facts at ¶¶ 33, 35-36.

- When Ms. Bisch and Compliance Manager Heather Pope met with Plaintiff to discuss the results of the audits of her caseload, Plaintiff "did not dispute that she had failed to complete certain documentation, make the APS report, and comply with certain HIPAA requirements." See Def. Statement of Facts at ¶ 43; Pl. Opposition to Def. Statement of Facts at ¶ 43.

---

[1] The Court provided Plaintiff an opportunity to file a supplemental, amended, and/or additional Opposition in response to Defendant's complete summary judgment brief, which was deemed filed by Order of the Court on May 28, 2024. See Dkt. 46. Plaintiff did not do so. Defendant's Reply thus addresses the arguments made in Plaintiff's original Opposition filed on May 13, 2024. See Dkt. 42. Plaintiff's Opposition did not address and, therefore, has conceded that Plaintiff failed to establish the existence of a racially hostile work environment in violation of Section 1981. See Def. Br. at 19. Likewise, Plaintiff has conceded that Defendant's argument that summary judgment on the issue of damages is appropriate. See Def. Br. at 23.

- The emails and other documents describing the audit results are authentic business records.  See Def. Statement of Facts at ¶¶ 32, 35, 38; Pl. Opposition to Def. Statement of Facts at ¶¶ 32, 35, 38.

Moreover, while Plaintiff baldly attempts to deny direct quotes from her deposition, including her admissions that "I don't know why they treated me differently," and "I don't know why [Ms. Dember] would target me,"  see Def. Statement of Facts at ¶ 74, 77; Pl. Opposition to Def. Statement of Facts at ¶ 74, 77, Plaintiff's denial in argument (not even in the form of a sworn affidavit) must be disregarded. Counsel's argument does not change the binding nature of the Plaintiff's testimony.

In light of her admissions and controlling precedent, Plaintiff's opposition to summary judgment cannot succeed.  While it is clear from Plaintiff's Brief that she wishes that the Health Plan had made a different decision about what discipline to impose following the audit, or that the Health Plan had approached the audit in a different way, none of that matters and it is not sufficient to carry the heavy burden of proving pretext, as neither Plaintiff nor the Court may second guess the Health Plan's reasoned business decision and summary judgment is appropriate.  See Moss v. Nat'l Railroad Passengers Corp., No. 18-1262, 2019 WL 4697603, at *14, 19-20 (E.D. Pa. Sep. 26, 2019) ("The "question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].'") (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3d Cir. 1997)) (granting summary judgment on Section 1981 claim where plaintiff had nothing more than speculation that the employer's business decision was motivated by race discrimination); Ruff v. Temple Univ., 122 F. Supp. 3d 212, 218 (E.D. Pa. 2015) (granting summary judgment as to race discrimination claims under Title VII and Section 1981 because the Court is "neither permitted to get involved in the subjective business

decision of the employer, nor set its own employment standards for the employer."); see also

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

    **B.**    **The Various Other "Facts" Plaintiff Claims Support Her Position Are Either Unsupported by the Record or Irrelevant and Do Not Preclude Summary Judgment.**

Plaintiff's Opposition Brief relies on eight so-called "facts" that she claims support a

finding of pretext, i.e., that race discrimination was the real cause of the termination and that the

Health Plan's proffered reason is false. Pl. Opp. Br. at 8-10. Invariably, these "facts" are either

unsupported by the record or entirely irrelevant to the Court's inquiry on summary judgment.

Defendant addresses each of them in turn below.

First, Plaintiff boldly claims that her supervisor, Ms. Dember, who was not involved in the

decision to terminate Plaintiff, "had a demonstrated history of bias against Black females." Pl.

Opp. Br. at 8. There is absolutely no record support for such a claim. Plaintiff relies on Ms.

Dember's testimony that she had previously been involved with disciplining or managing the

performance of three other Black employees, Tika Steepe, J. Lewis, and Kendra Prussien. This,

by itself, is evidence of nothing, particularly where Plaintiff fails to provide the Court with the

context regarding these other employees. Of the three people Plaintiff identifies, two of them were

placed on development plans, which are not considered disciplinary action, and of those two

people, one resigned before completing the plan and one was successfully working through the

plan at the time of Ms. Dember's deposition. Pl. Ex. 5, O. Dember Dep. Tr. at 32:4-7; 34:18-35:9;

Pl. Ex. 4, J. Bisch Dep. Tr. at 32:1-33:11.[2] That means that Ms. Dember has been involved in

exactly one other matter that led to the termination of an employee who also happened to be Black.

Given that more than half of Ms. Dember's team is Black, and that it is uncontested that the other

---

[2] For ease of reference, Defendant cites to the exhibits to Plaintiff's Opposition Brief wherever possible, including for all of the deposition testimony except Plaintiff's own, which was not included as an exhibit to Plaintiff's Opposition.

terminated employee admitted she had engaged in multiple serious policy violations, this is evidence only of Ms. Dember doing her job as a manager, and not of racial bias.  Pl. Ex. 5, O. Dember Dep. Tr. at 28:2-23.  Plaintiff has produced not a shred of evidence of Ms. Dember's purported racial bias *as it relates to Plaintiff.*  Plaintiff has also not produced any evidence of racial bias by Ms. Bisch, the person who actually made the decision to terminate Plaintiff.  Indeed, Plaintiff fails to identify any employee outside of her protected class that engaged in similar misconduct and was not terminated.[3]

As her second and seventh arguments, Plaintiff claims that the fact that she was not progressively disciplined or placed on a development plan prior to termination is evidence of pretext. Pl. Opp. Br. at 8, 10.  It is not.  The Health Plan's progressive discipline policy allows for immediate termination where the conduct is serious enough.  Pl. Ex. 11 at UPMC0391 ("Discharge may be used even without prior progressive action to address more serious violations….").  Ms. Bisch, the termination decision-maker, testified that Plaintiff was terminated and not, for example, transferred or placed on a performance improvement plan, because the audit results were "glaring" and included multiple "participant safety concerns," as well as "HIPAA violations, failure to report fraud, waste, and abuse," and other issues.  Pl. Ex. 4 at 57:14-58:7. Similarly, while the Health Plan uses development plans as a tool to manage employee performance, not discipline, it did not do so in this case due to the "extremely egregious" issues identified in the audit.  Id.; Pl. Ex. 5, O. Dember Dep. Tr. at 36:17-37:19.[4]  Further, Plaintiff's attempt to portray the audit of her cases or

---

[3] Plaintiff must prove that similarly situated individuals outside of her protected class were treated more favorably, or that her termination occurred under other circumstances giving rise to an inference of discrimination See, e.g., Williams v. Greyhound Lines Inc., C.A. No. 97-6997, 1998 WL 551981, at *3-4 (E.D. Pa. Aug. 11, 1998) (summary judgment granted on race discrimination claim where there was "simply no proof that similarly situated non-minority employees were treated more favorably").  Plaintiff has not identified a single non-Black employee who she claims was treated better than she was.

[4] Plaintiff's counsel did not ask Ms. Bisch, who was the decision-maker in this case, why Plaintiff was not placed on a development plan. Counsel did ask Ms. Bisch why a variety of other actions—such as a transfer to another role or

concerns about her performance as without warning is disingenuous.  It is undisputed that Plaintiff's supervisor raised concerns about Plaintiff's performance during multiple supervision meetings with Plaintiff that occurred before the audit of her cases, in October and December 2021. Def. Stmt. Facts at ¶¶ 13, 18.

Third, Plaintiff claims that Defendant did not produce evidence to corroborate the fact that Plaintiff had 108 outstanding tasks at the time she took a leave of absence in October 2021.  Pl. Opp. Br. at 8.  But that is not true and, in any event, is irrelevant to the termination decision.  Ms. Dember testified to that fact, and there are contemporaneous notes from the time that confirm it. Pl. Ex. 5 at 99:16-23; Pl. Ex. 13 at p. 1 ("Olga told Jackie that Shaneena had over 100 outstanding tasks before she took a leave of absence.").  Moreover, Plaintiff did not contest that fact at her deposition and does not do so now through submission of evidence to the Court.  Def. Ex. 6, Pl. Dep Tr. at 138:1-139:19.  Further, whether there is any dispute about the 108 outstanding tasks is not material because—while certainly indicative of Plaintiff's performance deficiencies—the outstanding tasks were not the specific reason for her termination, and thus are irrelevant to the Court's summary judgment determination.

Fourth, Plaintiff claims that the other Service Coordinators on Ms. Dember's team should have covered her outstanding tasks while she was away from work.  Pl. Opp. Br. at 9.  Plaintiff does not cite to any evidence to support this claim, which in any event is not relevant, because the Health Plan did not terminate Plaintiff due to the number of outstanding tasks she had.  It terminated her because of the serious deficits identified in an audit of her caseload, including missing documentation, missing authorizations, failure to regularly reach out to participants, and failure to report instances of possible neglect.  See Def. Stmt. Facts at ¶¶ 46-47.

---

another supervisor—were not taken, and Ms. Bisch gave essentially the same answer as Ms. Dember, i.e., that Plaintiff's conduct was so severe that termination was appropriate.  Pl. Ex. 4, J. Bisch Dep. Tr. at 57:23-59:7.

Fifth and sixth, Plaintiff misrepresents Ms. Dember's testimony about Plaintiff's performance issues and the supervision meetings that Ms. Dember held with Plaintiff in December 2021 in an attempt to support a pretext finding.  Pl. Opp. Br. at 9.  Specifically, Plaintiff claims that Ms. Dember "identified two issues" that existed prior to the December 10, 2021 supervision meeting with Plaintiff and she did not have an opinion on Plaintiff's performance.  Id.  But Ms. Dember specifically testified that she had identified issues with Plaintiff's performance *before* Plaintiff went on leave in October 2021.  Pl. Ex. 5, O. Dember Dep. Tr. at 106:3-9.  And, the contemporaneous notes from the December 10, 2021 supervision meeting identify many more than the two issues Plaintiff concedes in her brief, including not only her failure to attend meetings and team huddles, but also Plaintiff's failure to complete assessments and address tasks in a timely manner and to notify Ms. Dember of participant switches as required.  Def. Ex. 12, O. Dember Supervision Notes dated Dec. 10, 2021.  It flies in the face of the record evidence to suggest that Ms. Dember's performance concerns were limited to Plaintiff missing occasional meetings, or that Ms. Dember did not address her concerns with Plaintiff well before the audit started.  Plaintiff has not denied or presented evidence to refute the substance of *any* of Ms. Dember's concerns about her performance.[5]  Moreover, like many of her other attempts to manufacture some dispute, what was discussed with Plaintiff prior to the audit is largely irrelevant.  The decision to terminate was based on the audit results which Plaintiff cannot and does not dispute.

Eighth, in an attempt to demonstrate pretext, Plaintiff claims that the cases were not randomly selected for the audit.  Pl. Opp. Br. at 10.  Based on nothing more than her own speculation, Plaintiff accuses Ms. Dember of lying, asserting that it is "more likely that she selected

---

[5] At various points in her response to Defendant's Statement of Undisputed Facts, Plaintiff denies facts, but offers no record support for her denials.  That is not enough to overcome summary judgment.  Rather, Plaintiff must show a *genuine* dispute about facts.  Bare denials—including of specific quotes from her own deposition testimony, e.g., Def. Stmt of Facts at ¶ 77—are not enough.  See Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982).

for audit those cases which would have put [Plaintiff] in the worst possible light."[6]  Id.  Plaintiff has no evidence to support this claim.   Argument is not evidence and the evidence here is uncontested: Ms. Dember testified that the cases were selected randomly.  Pl. Ex. 4, O. Dember Dep. Tr. at 130:21-131:7.  Plaintiff has no basis to contest that because she testified that she did not know about the audit, knows nothing about the audit process, and had no role as a manager or in HR that would have given her any insight into the process.  Id. at 131:23-25; Def. Ex. 6, Pl. Dep. Tr. at 168:8-11, 88:17-22.  Further, Plaintiff fails to address the fact that by the end of the audit process, twenty-six (26) of her cases—representing around one third of her total caseload— were audited and revealed evidence of her misconduct.  See Def. Stmt. Facts at ¶ 38.

Plaintiff's focus in her Opposition on these unsupported and/or meaningless factual assertions reveals the weakness in her legal position.  Much like elsewhere in her brief, where Plaintiff points out things that could have gone differently in the audit of her cases, mentions her previous performance evaluations, or says that the Health Plan "ignored key evidence" (without identifying what specific evidence she is referring to), Plaintiff is grasping at straws and trying to muddy the waters in an attempt to make it seem like there is a genuine dispute where there is none.

### C.  Plaintiff's Retaliation Claim Fails.[7]

The basis of Plaintiff's retaliation claim is her allegation that she requested that Mr. Mendez attend a February 2022 supervision meeting between herself and Ms. Dember, and she was terminated 10 days later.  See Pl. Opp. Br. at p. 15.  The problem here is threefold.

---

[6] There is no evidence to suggest that the selection of the cases was motivated by race and even Plaintiff does not go so far as to make such a claim. She settles for speculation that the cases are not random, which is insufficient.

[7] Plaintiff mentions a hostile work environment claim in her Opposition. Pl. Opp. Br. at 1.  She had an opportunity to respond to Defendant's arguments regarding this claim but did not do so.  As explained in greater detail in Defendant's Opening Brief, Plaintiff does not come close to establishing the existence of a hostile work environment.  She has identified no conduct whatsoever that was "severe or pervasive" enough to have altered her working conditions, nor does the conduct that she does allege have any connection whatsoever to her race.  Proof of both of these elements is

First, Plaintiff's alleged request does not constitute protected activity.  Accepting Plaintiff's request as true for the purposes of the Motion[8], under oath, Plaintiff never claimed that she made a claim of race discrimination in connection with her request.  Def. Ex. 6, Pl. Dep. Tr. at 98:13-16, 159:2-22.  This is fatal to Plaintiff's retaliation claim, which requires Plaintiff to demonstrate that she opposed discrimination in the workplace or participated in a discrimination-related proceeding.  See, e.g., Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).  A simple request that a supervisor attend a meeting, which does not mention race or any other form of discrimination, is not protected conduct and cannot support a retaliation claim.  Daniels v. School Dist. of Phila., 776 F.3d 181, 190-91 (3d Cir. 2015) (complaints that no reasonable person could believe constituted discrimination are not protected activity).

Second, Plaintiff cannot show that there was a causal link between her alleged protected activity and the adverse employment decision.  A causal connection can be established either through (1) a showing of close temporal proximity between the protected activity and the alleged adverse action or (2) evidence of retaliatory animus or antagonism toward the employee between the two periods.  McLintock v. City of Philadelphia, 504 F. Supp. 3d 411, 424 (E.D. Pa. 2020) (no causal connection established where record did not demonstrate a pattern of antagonism or any retaliatory animus toward plaintiff)).  Plaintiff has demonstrated no evidence whatsoever of retaliatory animus on the part of Ms. Bisch—the decision-maker—because of Plaintiff's alleged request.  So, she must rely on temporal proximity between her request and her termination.  LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007).  The undisputed

---

required to prove a hostile work environment claim under Section 1981.  See, e.g., Miller v. Thomas Jefferson Univ. Hosp., 908 F. Supp. 2d 639, 649 (E.D. Pa. 2012); Boandl v. Geithner, 752 F. Supp. 2d 540 (E.D. Pa. 2010).

[8] Mr. Mendez denied receiving any such request. Pl. Ex. 3, R. Mendez Dep. Tr. at 55:16-25. Plaintiff claims this request was made in writing, but she has never produced any such email and the Health Plan searched for and found no such email.

record evidence, however, shows that by the time Plaintiff allegedly requested Mr. Mendez to attend the February meeting (which she claims she did on February 4, 2022), the events that led to her termination were already well underway. Specifically, the audit into Plaintiff's caseload had concluded and identified serious issues with every case that was audited, a result which Plaintiff does not dispute. <u>See</u> Def. Stmt. Facts at ¶ 60.

Third, as discussed above, Plaintiff cannot meet the difficult burden required to prove that the Health Plan's legitimate, non-retaliatory reason was actually pretext for retaliation (or race discrimination) given her admissions as to the findings of the audit of her cases. <u>See</u>, <u>e.g.</u>, <u>Fields v. American Airlines, Inc.</u>, __ F. Supp. 3d __, 2023 WL 6391689, at *22 (E.D. Pa. Sept. 29, 2023) (summary judgment granted where plaintiff admitted to the underlying conduct for which he was disciplined and did "not put forth any evidence to suggest that [defendant's] reasons are pretext for retaliation"); <u>see also</u> <u>Collins v. Kimberly-Clark Pennsylvania, LLC</u>, 247 F. Supp. 3d 571, 604-05 (E.D. Pa. 2017). Because Plaintiff has put forward no evidence that would show that the Health Plan's legitimate, non-retaliatory reason was pretext for retaliation (or race discrimination), summary judgment is appropriate.

## II.  CONCLUSION

For the foregoing reasons and the reasons set forth in its Opening Brief, the Health Plan respectfully submits that it is entitled to summary judgment on all of Plaintiff's claims.

By:  *s/ Thomas K. Johnson*
Thomas K. Johnson II (I.D. No. 84363)
Thomas.Johnson@faegredrinker.com
Brooke Razor (I.D. No. 322539)
Brooke.Razor@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103

Dated: June 25, 2024                    *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document and any related documents were served on counsel for the Plaintiff by operation of the Court's ECF system as follows:

Robert T. Vance, Jr., Esq.
Law Offices of Robert T. Vance, Jr.
100 South Broad Street, Suite 905
Philadelphia, PA 19110
rvance@vancelf.com

*Attorney for Plaintiff*

By:    <u>*s/ Thomas K. Johnson*</u>
Thomas K. Johnson II (I.D. No. 84363)
Thomas.Johnson@faegredrinker.com
Brooke Razor (I.D. No. 322539)
Brooke.Razor@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
(215) 988-2700

*Attorneys for Defendant*

Dated: June 25, 2024